**UNITED STATES DISTRICT COURT
DISTRICT OF MAINE**

| | |
|---|---|
| MICHAEL A. TUCK, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) 1:18-cv-00212-JDL |
| CITY OF GARDINER POLICE | ) |
| DEPARTMENT, et al., | ) |
| | ) |
| Defendants. | ) |

**ORDER ON PLAINTIFF'S MOTION TO AMEND COMPLAINT AND
KENNEBEC BEHAVIORAL HEALTH'S MOTION TO DISMISS**

This suit arises from the alleged unlawful seizure and forced hospitalization of the Plaintiff, Michael A. Tuck, in June 2015. The original complaint named multiple defendants: the City of Gardiner Police Department and three of its officers, the City of Gardiner Fire and Rescue Department, Central Maine Medical Center, and Kennebec Behavioral Health ("KBH"). KBH, noting that the complaint contains no substantive factual allegations against it, moved to dismiss all of the claims against it—illegal search and seizure (Count One), false imprisonment (Count Three), intentional infliction of emotional distress (Count Six), and negligent release of information resulting in injury (unnumbered Count Seven)—for failure to state a claim under Fed. R. Civ. P. 12(b)(6) (ECF No. 11). Tuck, acknowledging that his complaint is deficient, has moved for leave to file an amended complaint that adds factual allegations against KBH (ECF No. 16). KBH argues that granting Tuck leave to amend the complaint would be futile because the supplemented allegations still fail to state a claim upon which relief may be granted. I conclude that Tuck's proposed

amended complaint (ECF No. 16-1) states a claim against KBH for intentional infliction of emotional distress and negligent release of information and, therefore, grant Tuck's motion to amend. The proposed amended complaint does not, however, sufficiently state a claim against KBH for illegal search and seizure or false imprisonment. I therefore dismiss those claims against KBH.

## I. LEGAL STANDARD

After the time has passed during which a plaintiff may amend his complaint as a matter of course, the plaintiff may do so only with leave of the court. Leave to amend should be freely given "when justice so requires." Fed. R. Civ. P. 15(a). Accordingly, leave to amend is granted absent "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility." *Foman v. Davis*, 371 U.S. 178, 182 (1962). Even where there is good cause to amend, a court can exercise its discretion to deny a motion to amend if the amendment would be futile. *See Glassman v. Computervision Corp.*, 90 F.3d 617, 622-23 (1st Cir. 1996). "In assessing futility, the district court must apply the standard which applies to motions to dismiss under Fed. R. Civ. P. 12(b)(6)." *Adorno v. Crowley Towing and Transp. Co.*, 443 F.3d 122, 126 (1st Cir. 2006). Thus, to avoid futility, an amended pleading "must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Because Tuck is appearing *pro se*, I construe his complaint liberally and may

dismiss the claims at issue "only if [he] cannot prove any set of facts entitling him or her to relief." *Ahmed v. Rosenblatt*, 118 F.3d 886, 890 (1st Cir. 1997).

## II. FACTUAL BACKGROUND

In applying the above standard, I accept the following facts taken from Tuck's proposed amended complaint as true for the purpose of evaluating the pending motion. *McKee v. Cosby*, 874 F.3d 54, 59 (1st Cir. 2017).

On June 3, 2015, Tuck called the police about excessive traffic and suspicious behavior in his neighborhood. An officer from the Gardiner Police Department responded to Tuck's residence, made a report concerning Tuck's complaint, and left. During the next several hours, the Gardiner Police Department reviewed Tuck's medical records, which it received from KBH without a release or Tuck's authorization. Later that day, three Gardiner police officers arrived at Tuck's residence, and Tuck invited them inside thinking they were there to follow up on his earlier complaint. Instead, the officers informed Tuck that they had come to take him for a mental health evaluation (to "get checked out"). ECF No. 16-1 ¶ 16. Tuck refused, and for several minutes argued with the officers, during which the officers ignored Tuck's repeated requests that they leave his home. Eventually, one officer used his taser several times on Tuck to subdue him, during which Tuck sustained a self-inflicted injury to his neck and throat.[1] Tuck was then transported to Central Maine Medical Center for treatment of his injuries.

---

[1] Although Tuck's original complaint offers more detail concerning the nature of the self-inflicted injury, the proposed amended complaint does not. The discrepancy does not alter the analysis that follows.

Although medically cleared on June 10, Tuck was told that he had been "blue papered" (involuntarily admitted to a psychiatric hospital) and could not leave the hospital. In total, Tuck was kept against his will at Central Maine Medical Center for 21 days, during which KBH disclosed information about Tuck's health treatment and counseling history to Central Maine Medical Center without Tuck's knowledge or consent. Tuck was then transferred to Riverview Psychiatric Hospital in Augusta and held there involuntarily for another 21 days.

### III. LEGAL ANALYSIS

Tuck's proposed amended complaint asserts four claims against KBH: illegal search and seizure (Count One), false imprisonment (Count Three), intentional infliction of emotional distress (Count Six), and negligent release of information resulting in injury (Count Seven).

**A.  Illegal Search and Seizure (Count One)**

Tuck's claim for an illegal search and seizure is properly analyzed as a claim made pursuant to 42 U.S.C.A. § 1983 (West 2019). *See Holmes v. Meleady*, 738 F. Supp. 2d 196, 201 (D. Mass. 2010). "To make out a viable section 1983 claim, a plaintiff must show both that the conduct complained of transpired under color of state law and that a deprivation of federally secured rights ensued." *Santiago v. Puerto Rico*, 655 F.3d 61, 68 (1st Cir. 2011). If the plaintiff fails to allege facts sufficient to establish that the defendant acted under color of state law, the § 1983 claim is subject to dismissal.

There are no allegations in the proposed amended complaint that indicate that KBH is a state actor and is not, as KBH asserts, a private, not-for-profit corporation.

ECF No. 18 at 3. There are three tests to determine whether a private party can be characterized as a state actor: (1) the state compulsion test, (2) the nexus/joint action test, and (3) the public function test. *Estades-Negroni v. CPC Hosp. San Juan Capestrano*, 412 F.3d 1, 4-5 (1st Cir. 2005) (affirming dismissal of § 1983 claims against private healthcare providers that participated in plaintiff's involuntary mental health commitment because the alleged facts did not establish that they were state actors).

The allegations in the proposed amended complaint concerning KBH's involvement in Tuck's hospitalization lack detail and do not support any of the three tests. There are no facts suggesting (1) that the State "exercised coercive power" over KBH, or that it "has provided such significant encouragement, either overt or covert, that [KBH's conduct] must in law be deemed to be that of the State," *Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982); (2) that the State "so far insinuated itself into a position of interdependence with [KBH] that it [should be considered] a joint participant in" KBH's actions, *Estades-Negroni*, 412 F.3d at 6 (quoting *Bass v. Parkwood Hosp.*, 180 F.3d 234, 242 (5th Cir. 1999)); or (3) that KBH performed a public function that was "traditionally the exclusive prerogative of the State." *Blum*, 457 U.S. at 1005 (quoting *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 353 (1974)). The proposed amended complaint therefore fails to state a claim for illegal search and seizure against KBH.

**B.     False Imprisonment (Count Three)**

"[T]he gist of the common law tort [of false imprisonment] is conduct by the actor which is intended to, and does in fact, confine another within boundaries fixed

5

by the actor where, in addition, the victim is either 'conscious of the confinement or is harmed by it." *McCann v. Wal-Mart Stores, Inc.*, 210 F.3d 51, 53 (1st Cir. 2000) (internal quotation marks omitted) (noting that Maine caselaw lacks "comprehensive definition" of false imprisonment). Construing the facts of the proposed amended complaint in the light most favorable to Tuck, KBH allegedly disclosed Tuck's medical information to law enforcement personnel and other healthcare providers, which contributed in part to Tuck being held against his will. However, there are no factual allegations that KBH intended for Tuck to be held against his will. The proposed amended complaint therefore fails to state a claim for false imprisonment against KBH.

## C. Intentional Infliction of Emotional Distress (Count Six)

To plead a claim for intentional infliction of emotional distress, Tuck must allege that (1) KBH "intentionally or recklessly inflicted severe emotional distress or was certain or substantially certain that such distress would result from [its] conduct"; (2) the conduct was "extreme and outrageous"; (3) KBH's actions caused Tuck's emotional distress; and (4) the emotional distress Tuck allegedly suffered was "so severe that no reasonable [person] could be expected to endure it." *Curtis v. Porter*, 784 A.2d 18, 22-23 (Me. 2001).

Tuck's allegations that KBH disclosed his medical information to law enforcement personnel and other healthcare providers without his authorization can "reasonably be construed as extreme or outrageous and as reckless." *See Stokes v. Barnhart*, 257 F. Supp. 2d 288, 293-94 (D. Me. 2003) (denying motion to dismiss claim for intentional infliction of emotional distress arising from unauthorized disclosure

6

that plaintiff had the human immunodeficiency virus ("HIV") by Social Security Administration employee); *see also Hudson v. Dr. Michael J. O'Connell's Pain Care Ctr., Inc.*, 822 F. Supp. 2d 84, 89-90, 98 (D.N.H. 2011) (denying motion to dismiss intentional infliction of emotional distress claim where allegations were conclusory but plausible when viewing complaint, which included alleged retaliation, a hostile work environment, and disclosure of employee's medical records, as a whole). The allegations also allow the inference that Tuck's alleged emotional distress arising from his involuntary confinement was due, at least in part, to the release of Tuck's health history and counseling records, which KBH is alleged to have disclosed. Thus, the proposed amended complaint states a claim for intentional infliction of emotional distress against KBH.

**D.     Negligent Release of Information Resulting in Injury (Count Seven)**

"A cause of action for negligence has four elements: (1) a duty of care owed to the plaintiff; (2) a breach of that duty; (3) an injury; and (4) causation, that is, a finding that the breach of the duty of care was a cause of the injury." *Bell ex rel. Bell v. Dawson*, 82 A.3d 827, 831-32 (Me. 2013).

KBH does not dispute that a healthcare provider has a duty of care to ensure the privacy and confidentiality of its patients' medical information. *See Bonney v. Stephens Mem'l Hosp.*, 17 A.3d 123, 128 (Me. 2011) (noting that although Health Insurance Portability and Accountability Act (HIPAA) does not provide private cause of action for unauthorized disclosure of medical information, HIPAA can establish the standard of care associated with a state tort claim). The proposed amended complaint alleges facts that would establish a breach of this duty and that Tuck was injured.

KBH does not contest that it owed Tuck a duty, but instead argues that the proposed amended complaint fails to plead facts establishing a breach because healthcare providers are permitted under law to disclose patient information under certain circumstances. ECF No. 18 at 6-8. Whether those circumstances existed in this case, however, is a question of fact that cannot be decided at this early juncture.

KBH also argues that the proposed amended complaint fails to allege any facts establishing a causal link between its disclosure of medical information and Tuck's alleged injuries. *Id.* at 8-10. "The question of causation is generally one of fact to be determined by the fact-finder, and a judgment as a matter of law is improper if any reasonable view of the evidence could sustain a finding of proximate cause." *Dyer v. Me. Drilling & Blasting, Inc.*, 984 A.2d 210, 219 (Me. 2009) (internal quotation marks omitted). Here, construing the allegations liberally because Tuck is a self-represented plaintiff, the proposed amended complaint permits the inference that the Gardiner Police Department returned to Tuck's house on June 3 to get him "checked out" because of the healthcare information it had received from KBH. *See* ECF No. 16-1 ¶¶ 11-16. As noted earlier, the allegations also allow the inference that Tuck's confinement at Central Maine Medical Center and then Riverview Psychiatric Hospital was due, at least in part, to Tuck's health history and counseling records, which KBH is alleged to have provided to Central Maine Medical Center. *See id.* ¶¶ 28-30, 65-66. I therefore conclude that the proposed amended complaint states a claim for negligence.

## IV. CONCLUSION

For the foregoing reasons, I conclude that Tuck's proposed amended complaint sufficiently pleads a claim for intentional infliction of emotional distress (Count Six) and negligent release of information resulting in injury (Count Seven) and, therefore, that the amendment is not futile. Tuck's Motion for Leave to File an Amended Complaint (ECF No. 16) is **GRANTED**. However, because I also conclude that the amended complaint fails to state a claim under Rule 12(b)(6) on Tuck's remaining claims against KBH for illegal search and seizure (Count One) and false imprisonment (Count Three), I treat KBH's motion to dismiss the original complaint as having been made against Tuck's amended complaint. Accordingly, the motion to dismiss (ECF No. 11) is **GRANTED IN PART**: Counts One and Three of the amended complaint are **DISMISSED** as against Kennebec Behavioral Health, and the motion to dismiss is otherwise **DENIED**.

SO ORDERED.

Dated this 13th day of February, 2019.

                                                /s/ JON D. LEVY
                                        **CHIEF U.S. DISTRICT JUDGE**